This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant Ryan Duncan has appealed his numerous convictions and sentence in the Medina County Common Pleas Court. This Court affirms.
 I.
On May 8, 1998, Defendant was charged with assaulting a police officer, in violation of R.C. 2903.11. Because Defendant was under the age of eighteen, the complaint was filed in Medina County Juvenile Court (the juvenile court). During the pendency of that matter, Defendant escaped several times. In fact, due to Defendant's erratic behavior, he was transferred from the detention hall to a hospital for treatment. The case was ultimately transferred to Cuyahoga County Juvenile Court, where Defendant pled guilty. Thereafter, the case was transferred back to the juvenile court in Medina County. On July 1, 1998, the juvenile court released Defendant to the custody of his parents, with close supervision by a psychiatrist, a mental health agency and his family.
Several weeks later, on July 18, 1998, Defendant assailed his father and fled his parents' home on foot. A short distance away, Ohio State Route 303 intersects a railway. At that intersection, Defendant began hurling rocks at cars as they traversed the crossing.
The first car to be attacked was occupied by Cosa and Herman Becker of Michigan, both of whom were sixty-eight years old. Defendant had tossed a large rock through the passenger side window of the Becker's pick-up truck, striking Mrs. Becker in the back of her head. When Mr. Becker exited the vehicle to get Defendant's name, Defendant punched him, knocking him to the ground. After being struck again, Mr. Becker retreated to search for something with which to defend himself.
The second vehicle to pull-over after being struck with rocks was driven by Dwayne Sperko. Mr. Sperko had with him his wife Candice, their minor son and his minor friend. Mr. Sperko exited his vehicle and approached Defendant. When Mr. Sperko got within four to five feet, Defendant threw a rock directly at Mr. Sperko, striking him in the head. This knocked Mr. Sperko to the ground, near the railroad tracks. He became disoriented, had trouble walking and kept falling down while on the railroad tracks.
Next, David Davenport approached the railway crossing, but was unable to proceed due the fact that the intersection was blocked. He then observed Mr. Sperko on the tracks, calling for help, while Defendant beat a retreating Mr. Becker. Mr. Davenport exited his truck and retrieved a baseball bat from the truck's bed. When Mr. Davenport warned Defendant to stop, Defendant charged and knocked the bat from Mr. Davenport's hands. Mr. Davenport then fled to the other side of the tracks.
At that point, Mrs. Sperko attempted to help her husband back to their car. Defendant saw her and gave chase. Mrs. Sperko escaped safely to her car, but Defendant then proceeded to beat the vehicle with the bat. Then, Defendant returned to Mr. Becker and struck him with the bat.
Michelle Gatt approached the tracks as well. When she arrived, she witnessed Mrs. Becker attempt to shield her husband from further harm. As a result, Defendant struck both her and her husband with the bat. When Ms. Gatt called out to Defendant for him to stop, he chased her.
A nearby resident, Charles Mull, heard the commotion and took a machete out to the scene. When he arrived, Defendant was chasing Ms. Gatt. Upon seeing and hearing Mr. Mull's warning to stop, Defendant smiled, placed the bat over his shoulders and walked back to the tracks. Mr. Mull followed him, thus preventing Defendant from carrying out any further attacks.
The Medina County Sheriff Deputies arrived. When Deputy Mike Snider told Defendant to put the bat down, Defendant charged. Deputy Snider and Special Deputy Reynolds retreated to behind their cruiser. Defendant struck the vehicle with the bat. Eventually, pepper spray was administered to Defendant, the bat was recovered and he was forcefully restrained.
After his arrest, Defendant was transferred to the psychiatric ward at the Cleveland Clinic. On July 22, 1998, formal charges were filed in the juvenile court against Defendant for the July 18, 1998 assaults. On August 7, 1998, the juvenile court held a hearing on the first set of charges resulting from the May 1998 incident and committed Defendant to the Ohio Department of Youth Services.
On October 2, 1998, the juvenile court held a preliminary probable cause hearing for the July 18, 1998 attacks. The court found probable cause to believe that Defendant committed offenses against Mr. Becker, Mrs. Becker, Mr. Sperko and Deputy Snider. The juvenile court found no probable cause for the remaining counts, including the assaults on Mrs. Sperko and Mr. Davenport. A mental examination of Defendant was then ordered. After an amenability hearing, the juvenile court found that Defendant should be boundover and be tried as an adult for the four offenses found to have probable cause. However, in its journal entry, dated October 7, 1999, the juvenile court stated that Defendant's psychiatric problems had become stabilized during his commitment to the Ohio Department of Youth Services, while taking a certain medication. According to the juvenile court's journal entry, Defendant was currently refusing that medicine, but was taking a substitute. The juvenile court further stated that Defendant "was suffering from a mental disease at the time of the incident, and that he requires intensive psychiatric intervention in a secured setting." The juvenile court also wrote that "[t]his is not a case about a young man who clearly chose to participate in delinquent or criminal conduct." The juvenile court concluded by stating, "[w]hile this Court did find probable cause as to the elements of the acts alleged in certain counts of the complaint, the mental competence and capacity of the accused is certainly an issue."
On October 20, 1999, Defendant was indicted by the Medina County Grand Jury for the following crimes: Count I, felonious assault of Mr. Becker, in violation of R.C. 2903.11(A)(1); Count II, felonious assault of Mrs. Becker, in violation of R.C. 2903.11(A)(1); Count III, felonious assault of Mr. Sperko, in violation of R.C. 2903.11(A)(1); Count IV, assault of a peace officer, to wit: Deputy Snider, in violation of R.C. 2903.13(A)(c)(3); Count V, felonious assault of Mrs. Sperko, in violation of R.C.2903.11(A)(2); and, Count VI, felonious assault of Mr. Davenport, in violation of R.C. 2903.11(A)(2). The indictment also included a charge relating to the May 1998 incident: Count VII alleged felonious assault of Deputy Greiner, in violation of R.C. 2903.11(A)(1).
At his arraignment, Defendant pled not guilty by reason of insanity and requested a competency evaluation. The motion was granted, and an evaluation of competency was undertaken by a clinical psychiatrist, Dr. Ben-Porath. Dr. Ben-Porath also evaluated Defendant for his sanity during the events that transpired on July 18, 1998. At a hearing convened for the purpose of determining competency, the parties stipulated to the contents of the competency evaluation report. The trial court then held Defendant competent to stand trial.
Several weeks later, the State requested a second evaluation for the purpose of determining sanity at the time of the charged offenses. The trial court granted the motion, and Dr. Stephen Noffsinger was hired. When Dr. Noffsinger issued his report, Defendant moved for a third evaluation. Defendant also filed a motion to dismiss Count V, Count VI and Count VII, claiming those charges had not been boundover for adult prosecution.
On the morning of trial, Defendant waived his right to a jury trial and orally moved to dismiss, claiming that he had been denied his statutory and constitutional speedy trial rights. The trial court denied the motion. Defendant's motion for a third psychiatric evaluation was also denied at that time. The trial court reserved judgment on the motion to dismiss Count V, Count VI and Count VII, and the case proceeded to trial before the bench.
At the conclusion of trial, the court granted Defendant's request to dismiss Count VII, but denied his motion with regard to Count V and Count VI. The trial court found Defendant guilty on Count I, Count II, Count III, Count IV and Count V. As for Count VI, Defendant was found guilty of the lesser included offense of assault, in violation of R.C. 2903.13(A)(1). Defendant was then sentenced to the following: five years in prison for Count I, the assault on Mr. Becker; five years in prison for Count II, the assault on Mrs. Becker; five years in prison for Count III, the assault on Mr. Sperko; five years in prison for Count V, the assault on Mrs. Sperko; two years in prison for Count IV, the assault on Deputy Snider; and, six months in county jail for Count VI, the assault on Mr. Davenport. The trial court ordered that Count I, Count II, Count III and Count IV be served consecutively for a total of seventeen years. The remaining terms were directed to be served concurrently. Defendant timely appealed, asserting ten assignments of error. This Court has rearranged his arguments.
 II. A. Juvenile Bindover
Defendant has argued that the juvenile court's determinations as to probable cause and amenability were erroneous and, thus, transfer of jurisdiction to the trial court was improper. Ohio's bindover statute, R.C. 2151.26(C)(1), provides in part:
 [A]fter a complaint has been filed alleging that a child is a delinquent child for committing an act that would be a felony if committed by an adult, the court at a hearing may transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense, after considering the factors specified in division (C)(2) of this section and after making all of the following determinations:
 (a) The child was fourteen years of age or older at the time of the act charged.
 (b) There is probable cause to believe that the child committed the act charged.
 (c) After an investigation, including a mental examination of the child made by a public or private agency or a person qualified to make the examination, and after consideration of all relevant information and factors, including any factor required to be considered under division (C)(2) of this section, that there are reasonable grounds to believe that both of the following criteria are satisfied:
 (i) The child is not amenable to care or rehabilitation or further care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children.
 (ii) The safety of the community may require that the child be placed under legal restraint, including, if necessary, for the period extending beyond the child's majority.
Defendant has raised two arguments in attacking his bindover. First, he has argued that because the juvenile court believed that the case was not about "a young man who clearly chose to participate in delinquent or criminal conduct" and that Defendant "was suffering from a mental disease at the time of the incident," it could not have found probable cause as a matter of law, under R.C. 2151.26(C)(1)(b), for any of the offenses charged. Second, Defendant has argued that the juvenile court's determination that Defendant could be stabilized while taking certain medications vitiates its finding under R.C. 2151.26(C)(1)(c)(i), that Defendant was not amenable to care, rehabilitation, or further care or rehabilitation, during his commitment to the Ohio Department of Youth Services.
Nevertheless, upon review of the record, Defendant has failed to provide this Court with the docket and journal entries of the juvenile court. Defendant has also not provided transcripts of either the probable cause or amenability hearings. Absent a transcript, this Court must presume the regularity of the proceedings below. See, e.g., State v.Collins (June 3, 1998), Lorain App. No. 97CA006845, unreported, at 4, citing Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. Defendant's arguments with regard to the juvenile court's bindover decisions must therefore fail.
 B. Indictment
Next, Defendant has argued that the juvenile court's finding that no probable cause existed for either the assault on Mrs. Sperko or the assault on Mr. Davenport prevents prosecution and conviction of the same in the common pleas court. The State has countered that the grand jury's authority is not limited in that regard.
It is well established in Ohio jurisprudence that upon transfer from juvenile court, a grand jury is authorized to return a proper indictment on the facts submitted to it, and is not confined to the charges originally filed in the juvenile court. State v. Adams (1982),69 Ohio St.2d 120, paragraph two of the syllabus. To confine an indictment solely to the charges presented from juvenile court would improperly restrict the power of the grand jury to review the facts and indict on the charge or charges it feels is appropriate in any given case. State v. Walker (Sept. 28, 1999), Delaware App. No. 99 CA 2, unreported, 1999 Ohio App. LEXIS 4590, at *10.
In this instance, Defendant was boundover on four offenses, stemming from events that took place on July 18, 1998. Hence, the grand jury was free to review the entire set of facts from that date and indict on the charges it believed to be appropriate. This includes the charges of assault on Mrs. Sperko and Mr. Davenport. Defendant's argument to the contrary is without merit.
 C. Speedy Trial Rights
Defendant has also asserted that both the juvenile and trial court violated his statutory and constitutional right to a speedy trial. Essentially, Defendant has maintained that the delay between his arrest and trial was prejudicial and unwarranted.
Again, this Court notes that Defendant has not provided this Court with any record of the proceedings before the juvenile court and his arguments to that end are disregarded. However, this Court will address Defendant's speedy trial rights with respect to the trial court, as he has supplied the trial court records.
The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. The General Assembly enacted R.C. 2945.71 et seq. to enforce a criminal defendant's constitutional right to a speedy trial. The Ohio Supreme Court has held that the statutory speedy trial provisions of R.C. 2945.71 et seq. and the constitutional guarantees set forth in the United States and Ohio Constitutions are coextensive. Statev. O'Brien (1987), 34 Ohio St.3d 7, 9. In other words, when a defendant is brought to trial within the statutory time period, his or her constitutional speedy trial rights have not been violated.
R.C. 2945.71(C)(2) provides that individuals charged with felonies must be brought to trial within 270 days of his or her arrest. Applying this statute in the juvenile bindover context, the Ohio Supreme Court has held that the time for speedy trial commences to run the day after a juvenile court relinquishes jurisdiction. See State v. Bickerstaff (1984),10 Ohio St.3d 62, 67, citing State ex rel. Williams v. Court of CommonPleas (1975), 42 Ohio St.2d 433, 435. R.C. 2945.72(E) allows certain extensions or the tolling of time for "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused[.]" R.C. 2945.72(E). Lastly, this Court would note that the period during which the mental competency of the accused to stand trial is being determined by the trial court tolls the time in which a defendant must be brought to trial. R.C. 2945.72(B). See, also, State v. Palmer (1998), 84 Ohio St.3d 103, paragraphs one and two of the syllabus.
In the instant case, the juvenile court relinquished its jurisdiction on October 7, 1999, by transferring Defendant's case to the trial court. On October 8, 1999, Defendant's statutory speedy trial clock began to run.[1] A bench trial was commenced on August 7, 2000. Hence, a total of 305 days passed before Defendant was brought to trial. However, on October 29, 1999, Defendant moved for a competency evaluation. The trial court granted that motion and found Defendant competent to stand trial on January 14, 2000. Thus, 77 of those 305 days are chargeable to Defendant under R.C. 2945.72(E), and he was brought to trial in a timely manner. Neither his statutory nor constitutional speedy trial rights were violated by the trial court. Defendant's argument is without merit.
 D. Third Sanity Evaluation
Next, Defendant has contended the trial court abused its discretion by denying him a third mental evaluation to determine whether Defendant could appreciate the wrongful nature of his conduct, i.e. was legally insane, on July 18, 1998. This Court disagrees.
R.C. 2945.371 governs evaluations of a criminal defendant's mental condition. The statute provides, in relevant part:
 (A) If the issue of a defendant's competence to stand trial is raised or if a defendant enters a plea of not guilty by reason of insanity, the court may order one or more evaluations of the defendant's present mental condition or, in the case of a plea of not guilty by reason of insanity, of the defendant's mental condition at the time of the offense charged. An examiner shall conduct the evaluation.
 (B) If the court orders more than one evaluation under division (A) of this section, the prosecutor and the defendant may recommend to the court an examiner whom each prefers to perform one of the evaluations. If a defendant enters a plea of not guilty by reason of insanity and if the court does not designate an examiner recommended by the defendant, the court shall inform the defendant that the defendant may have independent expert evaluation and that, if the defendant is unable to obtain independent expert evaluation, it will be obtained for the defendant at public expense if the defendant is indigent.
Since the trial court "may order one or more evaluations" of a defendant's mental condition, the number of evaluations to be conducted is left to the sound discretion of the trial court. See State v. Hix
(1988), 38 Ohio St.3d 129, 131.[2] Thus, this Court reviews a trial court's decision to grant one or more evaluations of a defendant's mental condition for abuse of discretion. State v. Nelson (May 9, 2001), Medina App. No. 3103-M, unreported, at 3. "An abuse of discretion is more than an error of judgment, but instead demonstrates `perversity of will, passion, prejudice, partiality, or moral delinquency.'" Id., quoting Ponsv. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
In this case, Defendant filed a motion seeking both a competency and sanity evaluation. The trial court granted the same. Those exams were given by Dr. Ben-Porrath, of the Akron Psycho-Diagnostic Clinic. He determined that Defendant was competent to stand trial, but had been insane on July 18, 1998.
Next, the State moved for an examination for the purpose of determining sanity. That motion was granted, and Defendant was given an exam by Dr. Noffsinger, who reported that Defendant's mental illness did not impair his knowledge or awareness of the wrongful nature of his actions on the date in question. In turn, Defendant moved for a third evaluation. That motion was denied on the morning of trial. Hence, when the trial court denied Defendant's motion, the trial court had already granted one exam at Defendant's request and two sanity evaluations had already been rendered. Indeed, one report was favorable to Defendant, while the other was favorable to the State. This Court concludes that the denial of a third examination, under those circumstances, does not demonstrate perversity of will, passion, prejudice, partiality, or moral delinquency on the part of the trial court. Defendant's argument is rejected.
 E. Sufficiency
Defendant has also challenged the trial court's denial of his Crim.R. 29 motions regarding Count V, the assault on Mrs. Sperko in violation of R.C. 2903.11(A)(2) and regarding Count VI, the assault on Mr. Davenport in violation of R.C. 2903.13(A). In effect, Defendant has taken issue with the trial court's conclusion that he caused or attempted to cause physical harm to Mrs. Sperko and Mr. Davenport. Defendant's arguments are without merit.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution. Statev. Gulley (Mar. 15, 2000), Summit App. No. 19600, unreported, at 3.
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; see, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 386
("`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.").
R.C. 2903.11(A)(2) provides that "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon[.]" Similarly, R.C. 2903.13(A) provides that "No person shall knowingly cause or attempt to cause physical harm to another[.]"
At trial, Mr. Sperko testified that he saw Defendant forcefully remove the bat from Mr. Davenport's hands and chase his wife. He also testified that just as Mrs. Sperko reached their car, Defendant struck the vehicle with the bat. When she took the stand, Mrs. Sperko testified to the same. Mr. Davenport testified that when he warned Defendant to stop beating Mr. Becker, Defendant turned away from Mr. Becker and charged him. Mr. Davenport further testified that it was his belief that when Defendant charged him, Defendant knocked the bat from his hands. The Medina County Coroner, Dr. Neil Grabenstetter, testified that a baseball bat is capable of causing death. After viewing this evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found the essential elements of both counts proven beyond a reasonable doubt. Defendant's arguments to the contrary must fail.
 F. Insanity Defense
Defendant has claimed that his convictions and the trial court's rejection of his insanity defense were against the manifest weight of the evidence. Defendant has essentially argued that he met his burden of proving the defense of not guilty by reason of insanity by a preponderance of the evidence for every offense. This contention is without merit.
A reviewing court will not reverse a judgment as against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the State proved the offense beyond a reasonable doubt. State v. Eskridge (1988),38 Ohio St.3d 56, 59. The standard for reversal for manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Statev. Martin (1983), 20 Ohio App.3d 172.
A plea of not guilty by reason of insanity is an affirmative defense that must be proved by a preponderance of the evidence. State v. Brown
(1983), 5 Ohio St.3d 133, 134. "A person is `not guilty by reason of insanity'" only if he or she proves "that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C.2901.01(A)(14).
"The weight to be given the evidence and the credibility of the witnesses concerning the establishment of the defense of insanity in a criminal proceeding are primarily for the trier of the facts." State v.Thomas (1982), 70 Ohio St.2d 79, syllabus; see, also, State v. Filiaggi
(1999), 86 Ohio St.3d 230, 243. The trier of fact may reject an affirmative defense on the grounds of credibility. Id.; State v.Thompson (1994), 97 Ohio App.3d 629, 634. If the record demonstrates that the trier of fact has considered the insanity defense, the reviewing court should defer to the trier of fact's interpretation of the evidence. See State v. Curry (1989), 45 Ohio St.3d 109, 114. Indeed, a trial court's judgment as to the defense of insanity will be reversed only where overwhelming and uncontradicted evidence to the contrary is arbitrarily ignored. Brown, 5 Ohio St.3d at 134-135.
In the instant case, the State presented expert testimony that while Defendant suffered from two mental impairments, i.e. schizophrenia and conduct disorder, his condition did not influence his knowledge or awareness of the wrongfulness of his acts on the date in question. Dr. Noffsinger testified that during his interviews, Defendant acknowledged that he knew his actions were illegal at the time and that he was purposely seeking a confrontation with the police. Two other psychiatrists, who treated Defendant, testified that Defendant's schizophrenia was in remission due to therapy and that his conduct disorder would explain his violence. Evidence was also introduced that Defendant's conduct disorder is not a mental disease or defect. In response, Defendant introduced evidence that Defendant suffered from serious mental impairments prior to, during and after July 18, 1998. Nonetheless, Defendant's evidence of insanity was not uncontradicted and overwhelming. The trial court did not clearly lose his way and create a manifest miscarriage of justice. As such, Defendant's arguments condemning his convictions and the trial court's rejection of his insanity defense are not well taken.
 G. Other Acts Evidence
Next, Defendant has argued that the trial court improperly allowed the following three law enforcement officials to testify: Calvin Robinson, a former Cuyahoga County Juvenile Detention Officer; Scott Safenovitz, a Chagrin Falls Police Officer; and Michael Roberts, a Moreland Hills Police Officer. The State has argued that their testimony was relevant to Defendant's specific intent and was, therefore, admissible under Evid.R. 404(B) and R.C. 2945.59.
Given its superior vantage, the admission or exclusion of evidence rests within the trial court's sound discretion. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. The trial court's decision concerning the admission or exclusion of evidence will not be reversed absent an abuse of that discretion. Id. at 182. "An abuse of discretion is more than an error of judgment, but instead demonstrates `perversity of will, passion, prejudice, partiality, or moral delinquency.'" Nelson, supra, at 3, quoting Pons, 66 Ohio St.3d at 621.
Generally, in the criminal context, evidence of previous or subsequent criminal acts, wholly independent of the charges for which a defendant is on trial, is inadmissible. State v. Smith (1990), 49 Ohio St.3d 137,139, quoting State v. Wilkinson (1980), 64 Ohio St.2d 308, 314. Exceptions to this rule are codified in R.C. 2945.59 and Evid.R. 404(B).
Evid.R. 404(B) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
R.C. 2945.59 similarly provides:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
If there is substantial proof that the alleged other act was committed by the defendant and the evidence does in fact tend to prove intent, then evidence of the other act may be admissible. See State v. Lowe (1994),69 Ohio St.3d 527, 530, citing State v. Broom (1988) 40 Ohio St.3d 277,282-283, cert. denied (1989), 490 U.S. 1075, 104 L.Ed.2d 653. Such evidence should tend to prove that the accused understood the wrongful nature of his present offense by virtue of the fact that he committed prior or subsequent wrongful acts. Smith, 49 Ohio St.3d at 140, citingState v. Greer (1981), 66 Ohio St.2d 139, 142. But, the improper use of other-acts evidence necessitates reversal only when there is a "reasonable possibility that the testimony contributed to the accused's conviction." State v. Treesh (2001), 90 Ohio St.3d 460, 483, quotingState v. Lytle (1976), 48 Ohio St.2d 391, paragraph three of the syllabus.
In this case, Mr. Robinson testified that he apprehended Defendant after Defendant had escaped from the Cuyahoga County Juvenile Detention Center. Ptl. Safenovitz testified that he had apprehended Defendant three times after Defendant had escaped a mental hospital. Lastly, Ptl. Roberts testified that he had taken custody of Defendant after Defendant had been arrested by other police officers. In short, this evidence does not relate to Defendant's appreciation of the wrongful nature of his conduct on July 18, 1998. However, upon consideration of the record as a whole, this Court concludes that it is highly unlikely that "the `other act' testimony contributed in any noticeable degree" to Defendant's conviction. See Treesh, 90 Ohio St.3d at 483, quoting Lytle,48 Ohio St.2d at 403. Defendant's argument is not well taken.
 H. Consecutive Sentences
Finally, Defendant has called into question the trial court's imposition of consecutive sentences. Specifically, he has argued that the trial court did not take into account his mental condition when imposing sentence, as required by R.C. 2929.12. This Court disagrees.
R.C. 2929.14(E)(4) sets forth the three findings required before the imposition of a consecutive sentence. A trial court must find that:
 [T]he consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
R.C. 2929.14(E)(4). A trial court must also give its "reasons for imposing the consecutive sentences." R.C. 2929.19(B)(2)(c). Certainly, as Defendant has argued, the sentencing factors listed in R.C. 2929.12 may relate to those reasons. R.C. 2929.12(A) confers upon courts discretion over how to most effectively comply with the purposes and principles of sentencing set forth in R.C. 2929.11. R.C. 2929.12(A) further directs that in the exercise of such discretion, courts shall consider the applicable aggravating and mitigating factors specified in the statute. One factor allows a sentencing court to consider grounds to mitigate the offender's conduct, although those grounds were not enough to constitute a defense. See R.C. 2929.12(C)(4).
This Court's standard of review is controlled by R.C. 2953.08(G). According to the statute, it is incumbent upon an appellate court to determine whether the trial court (1) failed to make the required statutory findings, and, (2) clearly and convincingly acted contrary to law or the record. Id.
At the sentencing hearing, the trial court found that "consecutive prison terms are appropriate and necessary to protect the public in this case and to punish the offender; that these consecutive prison terms would not be disproportionate to the conduct and to the danger that this offender poses."[3] The trial court then noted that Defendant had been under house arrest at the time of these offenses and that "the harm in this matter that was imposed on these victims was so great that a single term would not reflect the seriousness of the conduct." Finally, the trial court reviewed the harm to the victims and expressly stated that he had weighed the age and the mental, physical and economic harm to the victims against Defendant's mental illness. Thus, the trial court made the necessary findings and satisfied the requirements of R.C. 2929.12(A), 2929.14(E)(4) and 2929.19(B)(2)(c). Defendant's argument is without merit.
 III.
Each of Defendant's ten assignments of error are overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 _____________________ BETH WHITMORE
SLABY, J. CONCURS
[1] This Court notes that Defendant was incarcerated for a previous offense during these proceedings, and the triple count provision of R.C.2945.71(E) is not applicable.
[2] In Hix, the Ohio Supreme Court interpreted similar language under former R.C. 2945.39.
[3] Likewise, a review of the trial court's journal entry in this case reveals the following language: "Pursuant to [R.C. 2929.14(E)], the Court finds for the reasons stated on the record that consecutive sentences are necessary to protect the public from future crime and to punish the defendant and not disproportionate to the seriousness of the defendant's conduct and the danger the defendant poses to the public."